COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, Ortiz and Lorish
Argued at Norfolk, Virginia


YOUSSEF HOBALLAH

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0729-21-1                 JUDGE RANDOLPH A. BEALES
                                                    SEPTEMBER 13, 2022

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                          David W. Lannetti, Judge

           Kristin Paulding (7 Cities Law, on brief), for appellant.

           Leanna C. Minix, Assistant Attorney General (Jason S. Miyares,
           Attorney General, on brief), for appellee.


        Youssef Hoballah pled guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), to

charges of (1) stalking another person while a protective order against him was in effect,

(2) violating a protective order, and (3) stalking another person as a second offense within five

years.  On appeal, Hoballah contends that the Circuit Court of the City of Norfolk erred in

denying his "motion to set aside the findings from the April 30, 2021, hearing because a

structural error was committed."  He also argues that "[t]he trial court erred in denying the

appellant's motion to withdraw his guilty plea."

                                      BACKGROUND

        "In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, [as] the prevailing party at trial."  *Gerald v.

Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(2016)).  On December 15, 2020, Hoballah entered a written guilty plea under *Alford* to two counts of stalking and one count of violating the terms of a protective order.  The plea agreement provided that the trial court would take the charges under advisement for two years without a finding of guilt.

Under the terms of the written plea agreement, Hoballah was ordered to complete two years of supervised probation, to remain of good behavior, not to contact his estranged wife ("the victim") except for the purpose of facilitating a divorce from her, and to remain outside the city limits of Norfolk and Virginia Beach.  If Hoballah was "entirely compliant" with the specified conditions during the two-year period, the trial court would then convict him of reduced misdemeanor charges and sentence him to twelve months in jail, all suspended, for each offense.  However, if Hoballah violated the terms of the plea agreement, the trial court would convict Hoballah of the two felonies and one misdemeanor to which he pled guilty with no agreement for sentencing.  The agreement also provided for the Commonwealth to move to *nolle prosequi* charges of aggressive driving with the intent to injure another person, unlawful use of an electronic tracking device, and an additional charge of violating a protective order.  The plea agreement, which was signed by Hoballah, the Commonwealth, defense counsel, and the trial court, stated that it was "the total agreement between the parties" and that there were no other promises or inducements made to Hoballah by the Commonwealth.[1]

At the December 15, 2020 hearing on the entry of the plea agreement, Hoballah acknowledged that he had read and signed a four-page document entitled "Advice to Defendants Pleading Guilty."  That form required Hoballah to confirm that he had discussed with his lawyer possible defenses to the charges and that he was entering the guilty plea freely and voluntarily.

---

[1] Hoballah, before agreeing to this plea agreement, had previously had a jury trial on all of these charges, but a hung jury resulted in a mistrial on all counts.

Defense counsel confirmed to the trial court that he had reviewed the form with Hoballah "line by line," that Hoballah had reviewed the document again that day, and that Hoballah had "initialed and signed it." Hoballah also agreed to a written "Stipulation of Facts" containing the evidence that the Commonwealth would have produced if the matter had gone to trial. The stipulation of facts detailed ten instances during which Hoballah stalked and harassed the victim between March and July 2019. The trial court accepted Hoballah's *Alford* guilty plea as "given freely and voluntarily with a full understanding of its import." Pursuant to the plea agreement, the trial court deferred a determination of guilt and took the matter under advisement for a period of two years. After reviewing the conditions with Hoballah, the trial court *nolle prosequied* the other three charges, and set the matter for a hearing on December 15, 2022.

On January 29, 2021, Hoballah's probation officer filed a major violation report alleging that Hoballah had violated the conditions of his probation imposed by the written plea agreement. On January 22 and 23, 2021, Hoballah had been seen in Norfolk and in the vicinity of the victim. The police confronted Hoballah with an emergency protective order outside of the victim's residence on January 23, 2021. Hoballah claimed that he went to Norfolk to meet his probation officer. However, no such meetings were actually scheduled. The trial court issued a "probation violation capias" for Hoballah's arrest, and he was served with it on February 12, 2021. Based on Hoballah's alleged violations of the written plea agreement, the Commonwealth filed a motion to advance the hearing date of the findings previously taken under advisement on December 15, 2020.

On April 29 and 30, 2021, the trial court conducted an evidentiary hearing concerning whether Hoballah had violated the conditions of his plea agreement. The Commonwealth presented testimony from witnesses who saw Hoballah in Norfolk and in proximity to the victim on January 22 and 23, 2021. In addition, Hoballah's probation officer testified that Hoballah did

not have a scheduled meeting with him or anyone in the probation office on those days or even "within a couple of weeks" of those days.

At this hearing, Hoballah asserted that, in addition to the trial court's consideration of the guilty plea, Hoballah should also be tried for his probation violation pursuant to the "probation violation capias." Hoballah argued that he was "in custody on that probation violation, not on anything else." Despite objections from Hoballah, the trial court stated that it was "not going to be ruling on any kind of probation violation" and was instead there to rule on "whether the Plea Agreement has been complied with or not." The trial court noted that it was "common to issue a probation violation capias" when a defendant, for example, violated the terms of a deferred disposition for a controlled substance first-offender conviction. The circuit court clerk confirmed that issuing a "probation violation capias" was standard practice for these types of situations and that no separate probation violation proceeding was then pending against Hoballah and before the court.

Upon the evidence presented, the trial court concluded that Hoballah had violated the terms of the plea agreement, found him guilty of the two felony stalking charges and the misdemeanor of violating a protective order, and then continued the matter for sentencing. The trial court stated that the "evidence is overwhelming" here and explained, "The Court finds the defendant had no reason to be in Norfolk. It was a clear violation for him to enter the City of Norfolk under the conditions" of the plea agreement.

Before the sentencing hearing, Hoballah filed a motion to withdraw his *Alford* guilty plea. He argued in part that he had entered his guilty plea under the impression that the Commonwealth would not charge him with violating the "good behavior" conditions associated with two other convictions in 2018 because of his current guilty pleas to stalking and violating a protective order. In addition, he asserted that a probation violation proceeding was instituted by

- 4 -

the probation violation capias issued in February 2021, and that he had been entitled to a resolution of the alleged probation violation at the April 29 and 30, 2021 hearing. After hearing argument on the motions at his sentencing hearing, the trial court denied Hoballah's motions to withdraw the guilty plea and to set aside its finding of guilt. After the trial court had sentenced Hoballah, Hoballah then renewed his motions to set aside the findings of guilt and to withdraw the *Alford* guilty plea, but the trial court denied Hoballah's motions.

Hoballah now appeals to this Court.

ANALYSIS

I. Structural Error Claim

In his first assignment of error, Hoballah argues that "[t]he trial court erred in denying the appellant's motion to set aside the findings from the April 30, 2021, hearing because a structural error was committed that rendered the proceedings defective." Hoballah contends that the trial court "refused to hold a trial on the Probation Violation and that created the structural error that requires automatic reversal."

"A 'structural error' is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Prieto v. Warden of the Sussex I State Prison*, 286 Va. 99, 103 (2013) (quoting *Morrisette v. Warden of the Sussex I State Prison*, 270 Va. 188, 192 (2005)). Structural errors require automatic reversal because they "deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair." *Neder v. United States*, 527 U.S. 1, 8-9 (1999) (quoting *Rose v. Clark*, 478 U.S. 570, 577-78 (1986)). "Structural errors have been found in a very 'limited class of cases,' and include the denial of counsel, the denial of an impartial trial judge, and the

systematic exclusion of members of the defendant's race from the grand jury." *Prieto*, 286 Va. at 103 (quoting *Johnson v. United States*, 520 U.S. 461, 468-69 (1997)).

At its core, Hoballah's structural error argument rests upon the erroneous conclusion that, at the time of the hearing on April 29 and 30, 2021, "[t]wo separate cases were on the docket." To the contrary, the record is clear that when that hearing occurred, there was only one matter before the trial court—the charges to which Hoballah pled guilty and which the trial court took under advisement on December 15, 2020. Although the trial court issued a "probation violation capias" for Hoballah's arrest based upon his conduct on January 22 and 23, 2021, a "*capias* is simply a bench warrant of arrest—not a charging document or some form of judicially-issued notice pleading." *Price v. Commonwealth*, 51 Va. App. 443, 447 (2008) ("The function of a capias is to authorize a law enforcement officer to take the probationer into custody."). As the circuit court clerk confirmed, no separate probation revocation proceeding was instituted against Hoballah. The capias was simply issued in furtherance of the "first offender" disposition Hoballah received under the plea agreement, which provided for a deferred finding of guilt and an agreed-upon disposition if Hoballah complied with the specified conditions—including successful completion of probation—for the next two years.

Hoballah has failed to provide any legal authority, and we are aware of none, extending the limited class of cases warranting structural error review to the situation now before us. The trial court here accepted Hoballah's voluntary and intelligent guilty plea, convicted him of the charged offenses, and sentenced him within lawful limits. The trial court held a two-day hearing that gave Hoballah the full opportunity to be heard on the merits of his alleged violation of the plea agreement. Hoballah was given notice of the hearing and of the allegations against him. After hearing all the evidence over the course of two days, the trial court found that Hoballah "had no reason to be in Norfolk" and that "[i]t was a clear violation for him to enter the

City of Norfolk under the conditions" of the plea agreement. Accordingly, the record demonstrates that the trial court gave Hoballah ample opportunity to be heard on the merits and considered all of the evidence and arguments presented by Hoballah and the Commonwealth before finding that Hoballah had clearly violated at least one of the four conditions of the plea agreement by entering the City of Norfolk. Consequently, this Court finds no merit to Hoballah's claim of a structural error in the proceedings. Therefore, the trial court did not err in its finding that Hoballah violated the plea agreement and in its conviction of Hoballah for the crimes to which he pled guilty.

## II. Withdrawal of Guilty Plea

In his second assignment of error, Hoballah argues that "[t]he trial court erred in denying the appellant's motion to withdraw his guilty plea because it was made in good faith and the appellant had a reasonable basis for contesting his guilt."[2] Hoballah asserts that, because his first trial in this case ended in a mistrial, "[t]he hung jury reflects the Appellant's reasonable defense because there were some jurors who had doubts to his guilt."

"The decision whether to allow a defendant to withdraw his plea 'rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case.'" *Spencer v. Commonwealth*, 68 Va. App. 183, 186 (2017) (quoting *Parris v. Commonwealth*, 189 Va. 321, 324 (1949)). We review this decision on appeal for an abuse of discretion and will reverse "only upon 'clear evidence that [the decision] was not judicially sound.'" *Id.* (quoting *Jefferson v. Commonwealth*, 27 Va. App. 477, 488 (1998)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred" with regard to a trial court's denial of

---

[2] A motion to withdraw a guilty plea entered pursuant to *Alford* is analyzed in the same manner as a motion to withdraw a guilty plea that includes an admission of guilt. *See Zigta v. Commonwealth*, 38 Va. App. 149, 153 (2002).

a motion to withdraw a guilty plea. *Williams v. Commonwealth*, 59 Va. App. 238, 246-47 (2011) (quoting *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006)).

"[A] motion to withdraw a guilty plea made prior to sentencing should only be granted if a two-part test is satisfied: first, that the motion is made in good faith, and second, the defense advanced in support of the motion is reasonable and not merely dilatory or formal." *Branch v. Commonwealth*, 60 Va. App. 540, 546 (2012) (citing *Parris*, 189 Va. at 324-25); *see Velazquez v. Commonwealth*, 292 Va. 603, 616 (2016) ("a defendant who moves to withdraw a guilty plea *before* sentencing need only show that his motion was made in good faith and premised upon a reasonable basis"). "The *Parris* test serves two purposes. The good faith requirement 'protects the integrity of the judicial process by precluding defendants from using a guilty plea as a subterfuge to manipulate the court,' and the reasonable defense requirement 'defeats motions to withdraw which would result in an essentially futile trial.'" *Hubbard v. Commonwealth*, 60 Va. App. 200, 208 (2012) (quoting *Cobbins v. Commonwealth*, 53 Va. App. 28, 34 (2008)). In addition, the Supreme Court recognizes "prejudice to the Commonwealth as a relevant factor that should be considered when reviewing a motion to withdraw a guilty plea." *Small v. Commonwealth*, 292 Va. 292, 298 (2016). Concerning the second prong of the test, "[a] reasonable defense sufficient to withdraw a guilty plea is 'one based upon a proposition of law or one supported by credible testimony, supported by affidavit.'" *Ramsey v. Commonwealth*, 65 Va. App. 593, 602 (2015) (quoting *Williams*, 59 Va. App. at 249).

Here, Hoballah has failed to provide *any* indication of a reasonable defense to the charges to which he pled guilty. The stipulation of facts, to which Hoballah agreed, detailed Hoballah's extensive stalking and harassing behavior toward the victim from March to July 2019. Hoballah repeatedly stalked her at her home, employment, and at social occasions. He used his car to strike the victim's vehicle, causing her "to lose control of her vehicle." In addition, Hoballah

installed an electronic tracking device on the victim's car to track her whereabouts. He also was "seen by two eyewitnesses using binoculars to watch" the victim while she was "at a backyard BBQ." While Hoballah argues that his previous mistrial in this case essentially shows that he has a reasonable defense to these charges, Hoballah has made no attempt to refute the stipulation of facts and the evidence here showing that he has repeatedly stalked and harassed the victim. Consequently, we cannot say that Hoballah has demonstrated a reasonable defense as required under the second prong of the *Parris* test.[3] Therefore, the trial court did not abuse its discretion in denying Hoballah's motion to withdraw his guilty plea.[4]

---

[3] As this Court has decided that Hoballah did not provide a reasonable defense under the second prong of the *Parris* test, this Court does not need to reach the Commonwealth's argument that Hoballah had a lack of good faith in seeking to withdraw his guilty plea. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) (recognizing that "judicial restraint dictates that we decide cases 'on the best and narrowest grounds available'" (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

[4] Hoballah also argues that the plea agreement should be "null and void" because his plea agreement contains the provision that, "[i]f the Defendant files an appeal of this matter, then this agreement is null and void." However, Hoballah "acknowledges that this specific argument was not made before the trial court but requests review under the good cause or ends of justice exception." As this Court has stated, "The good cause exception is applied when an appellant did not have the opportunity to object to an alleged error during the proceedings below." *Flanagan v. Commonwealth*, 58 Va. App. 681, 694 (2011). In addition, "[t]he ends of justice exception to Rule 5A:18 is narrow and is to be used sparingly." *Id.* (quoting *Copeland v. Commonwealth*, 42 Va. App. 424, 442 (2004)). "In order for the exception to apply, '[t]he record 'must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." *Id.* at 695 (quoting *Akers v. Commonwealth*, 31 Va. App. 521, 527 n.2 (2000)). Here, Hoballah had plenty of opportunities to raise this argument to the trial court, including (1) during the two-day hearing on April 29 and April 30, 2021, (2) in his motion to withdraw the guilty plea, and (3) in his renewed motion to set aside the findings of guilt and withdraw his plea. In addition, the record certainly does not affirmatively show that a miscarriage of justice occurred, and Hoballah agreed to the stipulation of facts, which extensively detailed ten instances where Hoballah stalked and harassed the victim between March and July 2019. For all of these reasons, Hoballah's argument is barred under Rule 5A:18. Furthermore, Hoballah does not cite to any authority for his proposition that his unilateral breach of the plea agreement would render meaningless his knowing and voluntary plea of guilt before the trial court.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*