UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and White
Argued at Richmond, Virginia


MALIK GARY

MEMORANDUM OPINION* BY
v.        Record No. 1045-21-2            CHIEF JUDGE MARLA GRAFF DECKER
OCTOBER 4, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Randall G. Johnson, Jr., Judge

John W. Parsons (John W. Parsons, Attorney at Law, on brief), for
appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Malik Gary appeals his convictions for second-degree murder and use of a firearm in the

commission of a felony, in violation of Code §§ 18.2-32 and -53.1. He contends that the trial court

erred by denying his motion for a continuance on the day of trial. He also argues that the court

erroneously refused his motion to withdraw his no-contest pleas entered pursuant to a plea

agreement. For the following reasons, we affirm the trial court's judgments.

I. BACKGROUND[1]

In August 2020, the appellant was arrested for first-degree murder and use of a firearm in

the commission of murder in connection with a shooting death the previous month.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] "In accordance with familiar principles of appellate review, the facts will be stated in
the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v.
Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469,
472 (2018)).

In October 2020, the prosecutor filed notices indicating an intent to offer two different certificates of analysis at trial. One reflected that primer residue "commonly associated with the discharge of a firearm" was found on the driver's door and steering wheel of a Dodge Ram truck.[2] The second one concerned ballistics evidence. The appellant objected to the admission of those certificates "in lieu of testimony," compelling the prosecutor to call the preparers as witnesses.

That same month, the trial court granted the appellant's motion for a pre-trial order setting deadlines for the disclosure of witnesses and other matters before trial. The prosecutor provided written notice to the appellant of five expert witnesses that the Commonwealth intended to call at trial, including those who had prepared the certificates of analysis.

In December 2020, the court set the case for a jury trial to begin on May 4, 2021. Twelve days before trial, the Commonwealth emailed defense counsel an addendum to its earlier discovery responses identifying an extensive list of possible witnesses, including ten experts, eight civilians, and twenty-two law enforcement officers.

On the morning of trial, the appellant sought a continuance, stating that he needed it to secure the testimony of two unidentified defense witnesses. Defense counsel explained that the appellant had provided him with the names of the two witnesses for the first time "th[at] morning." Counsel stated that he probably knew how to reach one witness but probably did not know the whereabouts of the second one. He noted that he had discussed the case with the appellant several times, including the night before trial, but the appellant had not previously identified these potential witnesses. The Commonwealth opposed the motion, stating that it had twelve witnesses prepared to testify, including expert witnesses.

---

[2] The Commonwealth later proffered that the appellant drove that truck from the scene of the victim's shooting death.

Emphasizing that the case had been on the docket for months and a pre-trial order governing witnesses had been entered, the trial court denied the appellant's continuance motion.[3] Defense counsel objected to the ruling, stating that the appellant believed that the two witnesses were "instrumental in his defense" and he would be prejudiced by the denial of the continuance motion. At that time, however, the appellant did not name the witnesses, proffer their anticipated testimony, or provide any details concerning the nature of the prejudice that he alleged would arise from their absence.

That same day, during the arraignment of the appellant on the first-degree murder and firearm charges, he again maintained that he was not prepared for trial. He claimed that in December 2020, he had provided his attorney with the name of the owner of the truck associated with the murder. He stated that the truck belonged to his cousin and that he had not realized until the night before trial that he needed his cousin's testimony. The appellant added that he had attempted to reach his cousin at the "last minute" but did not say whether he was successful. He also asked the court to appoint new counsel for him, alleging that defense counsel had failed to return calls from two other potential witnesses, Clinton Ajala and Shelley Batista.

Defense counsel responded that he had interviewed Batista, a character witness, in December 2020 and that no other potential witnesses had left messages indicating that they needed to speak with him. Counsel stressed that he and the appellant had engaged in numerous conversations about the case and had met at least nine times. Defense counsel noted that in the week prior to trial, he had met with the appellant three times for about two hours each time. During those meetings, counsel discussed the facts and any potential defenses with the appellant. After defense counsel indicated that he was prepared to go forward with the trial, the court

_____

[3] The court observed that the trial was scheduled to last two days. It suggested that the appellant could attempt to present the new witnesses in that time frame, subject to possible objection by the prosecution.

denied the appellant's motion for new counsel and accepted his not-guilty pleas to the first-degree murder and firearm charges.

In the midst of jury selection, the parties requested a recess in order to discuss the possible resolution of the charges without a trial. Following the recess, the parties announced that they had entered into a plea agreement. The agreement provided that, upon the appellant's entry of no-contest pleas to the reduced charge of second-degree murder and the related firearm offense, the Commonwealth would "argue for a period of incarceration no more than fourteen . . . years." It also stated that "by entering [into the a]greement, [the appellant] freely, voluntarily, and knowingly waive[d] his right, pursuant to . . . Code § 19.2-296, to move to withdraw his plea of guilty." Further, it "acknowledge[d that withdrawal] would prejudice the Commonwealth." The appellant, both attorneys, and the trial court signed the document.

The court then arraigned the appellant on the amended charges, and he entered no-contest pleas. The appellant confirmed that he understood the maximum sentences for the offenses. In response to questions from the trial court, he recited each maximum sentence himself, and he indicated his understanding that the court was not bound by the sentencing guidelines. The appellant also stated that he was entering the pleas freely, voluntarily, and knowingly. He further acknowledged that his signature appeared on the plea agreement and he had agreed to "abide by all the terms and conditions of the agreement." At the conclusion of the colloquy, the trial court found that the appellant had entered the pleas freely, voluntarily, knowingly, and intelligently.

After the court accepted the pleas, the Commonwealth proffered the facts and submitted exhibits relating to the charges. The proffer indicated that on July 7, 2020, the appellant's cousin and another young male, the victim, had an altercation at an apartment complex. Upon learning about the altercation afterward, the nineteen-year-old appellant, his cousin, and several other young men went to the apartment complex in a truck. A confrontation ensued involving the

- 4 -

appellant, the victim, and others. The appellant's group heard gunshots, and the appellant ran back to the truck and handed one of them a gun. The appellant then drove the truck to the gun owner's home. The police found the victim lying dead in the apartment complex parking lot with a gunshot wound to the head. The next morning, the appellant admitted to the mother of one of the young men who had gone to the apartment complex with him that he had shot the victim.

After the trial court convicted the appellant on his no-contest pleas, sentencing was scheduled for September 15, 2021. Prior to that date, a presentence report and sentencing guidelines calculations were prepared. The sentencing guidelines recommended a sentence between thirteen and twenty-two years.

The appellant filed a written motion seeking to withdraw his no-contest pleas. Defense counsel argued the motion before sentencing at the scheduled hearing. The appellant presented no evidence with regard to the motion other than his own testimony.

In the written motion, the appellant proffered for the first time the *specific* manner in which he contended that the trial court's denial of his motion for a continuance had prejudiced him. He stated that his "witness owned the pickup truck that [the appellant] was allegedly driving on the day of the incident." He explained that the witness would testify that he had also loaned the truck to a different man, who had "brake dust" on his hands. According to the appellant, the "brake dust produced the alleged gun shot residue" found on the driver's door and steering wheel of the truck. The motion represented that the appellant had not previously provided the name of the witness to his counsel "because [he] did not learn of the potential witness until the evening prior to [trial]."

In that motion, the appellant maintained that he entered the no-contest pleas because the trial court denied his motion for a continuance and he "fear[ed] that he would receive in excess of fourteen . . . years" if he went to trial and "his witness was not allowed to testify." He also

claimed that the Commonwealth "continue[d] to have witnesses available to testify" and would not be "substantially prejudiced" by the withdrawal of his pleas.

When the appellant was asked at the hearing why he wanted to withdraw his pleas, he answered that he "didn't know it was that high," presumably referring to the sentencing range, and he stressed "that [was] not the outcome that [he] wanted." He suggested that he "numbly accepted the plea agreement out of fear" because he did not feel "fully prepared for the trial" and worried that he would receive a longer sentence if he went to trial. The appellant additionally maintained that he was asking to withdraw his pleas because the denial of his continuance motion had "affected [his] ability to present a defense."

The appellant confirmed that he had executed a written plea agreement and that the court "went through the . . . agreement with [him] on the record" before accepting his plea. Defense counsel similarly conceded that the trial court had reviewed "each and every element of th[e plea] agreement with [the appellant]."

The trial court found that the appellant was bound by the terms of the plea agreement, based in part on his acknowledgment pursuant to its terms that "back[ing] out . . . would now prejudice the Commonwealth." It ruled further that appellant had failed to meet the requirements for the withdrawal of his plea under Code § 19.2-296.

## II. ANALYSIS

The appellant challenges the trial court's denial of his motion for a continuance and its refusal to allow him to withdraw his no-contest pleas prior to sentencing. He suggests that both rulings constituted an abuse of the court's discretion.

The term "abuse of discretion" means that the trial court "has a range of choice" and "its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Hernandez v. Commonwealth*, 67 Va. App. 67, 76 (2016) (quoting *Landrum v.*

*Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2001)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Ramsey v. Commonwealth*, 65 Va. App. 593, 599 (2015) (quoting *Williams v. Commonwealth*, 59 Va. App. 238, 246-47 (2011)). "This bell-shaped curve of reasonability governing . . . appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). We evaluate the appellant's assignments of error in light of these principles.

### A. Continuance Motion

The appellant contends that the trial court erred by denying his motion for a continuance at the start of trial "because there were [two] witnesses that he felt would be helpful to his defense if they could be present to testify" and their absence was "prejudicial" to him. He identifies the witnesses as the owner of the truck that he drove after the shooting (previously identified as his cousin) and another operator of that truck. The appellant stresses that he told the trial court that he had not realized that he needed the testimony of those witnesses until right before trial. Although he concedes that he never "clearly" proffered their alleged testimony at the time of the eleventh-hour motion for a continuance, the appellant emphasizes that his later motion to withdraw his plea "proffer[ed] in detail . . . what the witness[es]' testimony would have been."

When a criminal defendant argues on appeal that the trial court erred by denying his continuance motion, this Court applies a "'two-pronged' test." *Cooper v. Commonwealth*, 54 Va. App. 558, 565 (2009) (quoting *Lebedun v. Commonwealth*, 27 Va. App. 697, 712 (1998)). That test requires us to ask whether the trial court abused its discretion and whether the defendant was prejudiced. *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019) (citing *Ortiz v.*

*Commonwealth*, 276 Va. 705, 723 (2008)).  "This 'two-pronged' test has long been the standard under Virginia practice." *Cooper*, 54 Va. App. at 565 (citation omitted) (quoting *Lebedun*, 27 Va. App. at 712).  "Abuse of discretion and prejudice to the complaining party are essential to reversal." *Venable v. Venable*, 2 Va. App. 178, 181 (1986).  "The absence of one renders inconsequential the presence of the other." *Bolden v. Commonwealth*, 49 Va. App. 285, 290 (2007), *aff'd on other grounds*, 275 Va. 144 (2008).  Additionally, prejudice "may not be presumed; it must appear from the record." *Id.* (quoting *Lowery v. Commonwealth*, 9 Va. App. 304, 307 (1990)).

A fundamental precursor to the two-pronged test is an adequate proffer.  A proffer is necessary to permit an appellate court to determine whether the denial of a continuance requested in order to obtain evidence was an abuse of discretion and prejudiced the complaining party. *See Graham v. Cook*, 278 Va. 233, 249 (2009).  An appropriate proffer creates a record of "what the [evidence] would have been." *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 135 (1999).  In this regard, the proffer provides a complete record for review. *Wyche v. Commonwealth*, 218 Va. 839, 843 (1978).  It is not sufficient for a party to proffer "merely his theory of the case" rather than the substance of the excluded evidence. *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006).  In short, "[a]bsent a proffer showing 'harm was done,'" the appellate court is "'forbidden [from] consider[ing] the question.'" *Ray v. Commonwealth*, 55 Va. App. 647, 650 (2010) (quoting *Scott v. Commonwealth*, 191 Va. 73, 78-79 (1950)).

Here, at the time the appellant sought a last-minute continuance, he did not proffer to the trial court the nature of the testimony that the alleged missing witnesses would provide, whether their presence could be secured at a subsequent proceeding, or even their names.  Defense counsel stated merely that the appellant "believe[d] that these two witnesses [were] instrumental to his defense" and he would be prejudiced if his continuance motion was denied.  Only after the

trial court denied his motion did the appellant inform the court that one of the missing witnesses was the owner of the truck. Even then, he did not elaborate on what testimony the truck owner could offer. The appellant also stated that he had provided the name of the truck owner to his attorney in December 2020, months before the May 2021 trial. Further, the record demonstrates that the appellant was on notice in October 2020 that primer residue had been found on the steering wheel and driver's door of the truck that he drove to and from the scene of the apartment complex shooting.

Although the appellant provided further details about the expected testimony of both missing witnesses in his motion to withdraw his pleas, that motion was filed months after the trial court ruled on his motion for a continuance. This Court must review the trial court's continuance ruling based on the record available to that court at the time of its ruling. *See, e.g.*, *Creamer v. Commonwealth*, 64 Va. App. 185, 197-98 (2015). In light of the record before the trial court when the appellant sought a continuance, he failed to demonstrate that he would be prejudiced by the absence of the unnamed, unsecured witnesses, as well as precisely how he would be prejudiced, if the motion was denied. Accordingly, we hold that the trial court did not err by denying the motion.

### B. Motion to Withdraw No-Contest Pleas

The appellant asserts that the trial court erred by denying his motion to withdraw his no-contest pleas. He suggests that the waiver provision in the plea agreement "was never addressed in the colloquy" and, "[t]herefore, the colloquy never clearly established that [he] understood . . . that he was waiving his right to withdraw his plea[s]." For that reason, the appellant maintains the trial court erred by "simply rely[ing] upon the plea agreement" to deny

the motion to withdraw.[4]  Further, the appellant argues that the trial court erroneously held that

his motion did not comply with the requirements of Code § 19.2-296 for withdrawing his pleas.

In conducting our analysis of these claims, the Court is again guided by well-established legal

principles.

Whether to allow a defendant to withdraw his plea "rests within the sound discretion of

the trial court and is to be determined by the facts and circumstances of each case."  *Spencer v.*

*Commonwealth*, 68 Va. App. 183, 186 (2017) (quoting *Parris v. Commonwealth*, 189 Va. 321,

324 (1949)).  That court's ruling should be reversed "only upon 'clear evidence that [the

decision] was not judicially sound.'"  *Coleman v. Commonwealth*, 51 Va. App. 284, 289 (2008)

(alteration in original) (quoting *Jefferson v. Commonwealth*, 27 Va. App. 477, 488 (1988)).

Code § 19.2-296 permits a defendant to "withdraw a plea of guilty or nolo contendere"

under specific circumstances.  *Accord Brown v. Commonwealth*, 297 Va. 295, 299 (2019); *Small*

*v. Commonwealth*, 292 Va. 292, 298 (2016); *see also Clauson v. Commonwealth*, 29 Va. App.

282, 291-94 (1999) (recognizing that for procedural purposes, a nolo contendere or no-contest

plea operates in the same manner as a guilty plea).[5]  Nonetheless, a defendant can "expressly

waive" that statutory ability to withdraw his plea.  *Griffin v. Commonwealth*, 65 Va. App. 714,

718 (2016).  Further, as the Supreme Court of Virginia has made clear, "general principles of

contract law apply to plea agreements."  *Wright v. Commonwealth*, 275 Va. 77, 79 (2008).

---

[4] We assume without deciding that the appellant preserved this issue for consideration on appeal.  *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018).

[5] A plea of nolo contendere "waives all defenses except those jurisdictional."  *Smith v. Commonwealth*, 59 Va. App. 710, 722 (2012) (quoting *Clauson*, 29 Va. App. at 294).  It is an "agree[ment] that the court may consider [the defendant] guilty for the purpose of imposing judgment and sentence."  *Id.* at 723 (quoting *Jones v. Commonwealth*, 42 Va. App. 142, 147 (2004)).  Such a plea "'implies a confession . . . of the truth of the charge'" and "admits, for the purposes of the case, all facts supporting the accusation."  *Id.* (alteration in original) (quoting *Jones*, 42 Va. App. at 147).

Ordinarily, therefore, where the parties have entered into a plea agreement, a request to withdraw a plea pursuant to Code § 19.2-296 must take into account the agreement itself in light of contract principles. *Thomason v. Commonwealth*, 69 Va. App. 89, 95 (2018).

In *Griffin*, 65 Va. App. at 719, applying these legal requirements, this Court recognized that a criminal defendant can expressly waive statutory rights "through a writing, an oral statement, or a combination of both." We concluded that the defendant waived the ability to withdraw his guilty plea on the facts of that case. *Id.* First, he executed a plea agreement that expressly waived the right to withdraw the guilty plea and stipulated that such a withdrawal would prejudice the Commonwealth. *Id.* at 717, 720. Second, the trial court "engaged in an extensive colloquy" in which it reviewed the terms of the agreement with the defendant, specifically including the provision that he could not withdraw his plea. *Id.* at 717, 719. Finally, the prosecution presented evidence that it would be prejudiced if the defendant were permitted to withdraw his plea. *Id.* at 720. Based on these things, we concluded that the trial court did not abuse its discretion by "holding [the defendant] to the terms of the plea agreement" and denying his presentence motion to withdraw his plea. *Id.* at 719-20.

In this Court's subsequent decision in *Thomason*, 69 Va. App. at 99, we also concluded that the trial court did not err by denying the defendant's motion to withdraw his pleas. In *Thomason*, like in *Griffin*, the defendant entered into a plea agreement that included a provision waiving the right to withdraw his pleas. *Id.* at 95. However, unlike in *Griffin*, the defendant "was *not* questioned about his understanding of the waiver provision during the plea colloquy." *Id.* (emphasis added). In the absence of such questioning, the Court declined to apply *Griffin* to hold that the defendant waived his right to withdraw his pleas. *Id.* It reasoned instead that the best and narrowest ground for decision involved "address[ing] the propriety of permitting

- 11 -

withdrawal of the guilty plea itself rather than whether [the defendant] waived his right to do so."
*Id.*

Based on our holding in *Thomason*, we conclude in the appellant's case that the best and narrowest ground for decision requires the Court to address the ruling on the withdrawal of the no-contest pleas themselves, without regard for whether the appellant might have waived the right to withdraw his pleas based on the agreement. Therefore, we turn to the requirements for withdrawing a no-contest plea under Code § 19.2-296.[6]

A motion to withdraw a plea of guilty or nolo contendere under Code § 19.2-296 is "governed by two separate standards" depending upon whether the motion is made before or after sentencing. *Brown*, 297 Va. at 299. Under the more forgiving standard applied *before* sentencing, "a motion to withdraw should be granted if the . . . plea was 'made involuntarily' or 'entered inadvisedly, if any reasonable ground is offered for going to the jury.'" *Id.* (quoting *Parris*, 189 Va. at 325). In contrast, when a defendant makes such a motion *after* sentencing, "the court[,] within twenty-one days after entry of a final order[,] may set aside the judgment of conviction and permit the defendant to withdraw his plea" only in order "to correct [a] manifest injustice." Code § 19.2-296.

In this case, the appellant made his motion to withdraw his pleas before sentencing. Therefore, we look to the less stringent standard. The presentencing standard articulated in *Parris*, 189 Va. at 324-26, has two requirements. First, "a defendant has the burden of establishing that his motion is made in good faith." *Spencer*, 68 Va. App. at 187. Second, he "must proffer evidence of a reasonable basis for contesting guilt." *Id.* More recently, Virginia's appellate courts have recognized a third consideration, under which the circuit court must assess

---

[6] Although *Thomason* prevents us from resolving the challenge based on the plea agreement's *waiver provision*, that decision counsels us to consider the existence of the agreement generally. *See Thomason*, 69 Va. App. at 96.

any "prejudice to the Commonwealth." *Small*, 292 Va. at 298; *see Hubbard v. Commonwealth*, 60 Va. App. 200, 211 n.4 (2012). A defendant will be permitted to withdraw his plea only if all three requirements have been met. *See Ramsey*, 65 Va. App. at 600.

Here, the trial court ruled that the appellant failed to satisfy the good faith requirement. The appellant challenges this ruling on two grounds. First, he suggests that the trial court was confused about the type of pleas he entered, believing that they were guilty pleas rather than no-contest pleas. He speculates that this alleged error adversely affected the court's analysis of the good faith issue. Second, he argues that his own testimony showed that he acted in good faith in making and seeking to withdraw the pleas because he was surprised by the court's denial of his motion for a continuance to obtain the testimony of the missing witnesses.

To the extent that the appellant suggests that the trial court failed to recognize that he entered no-contest pleas and that this confusion adversely affected the court's ruling, the appellant failed to preserve this claim for appeal. Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." To meet the requirements of the contemporaneous objection rule, an objection must be both timely and specific. *See Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). Such an objection "afford[s] the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010); *see Bethea*, 297 Va. at 744; *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010).

In the present case, if defense counsel had alerted the trial court of his concern that it misapprehended the type of plea that the appellant had entered, the court would have been able to address the issue at that stage of the proceeding and could easily have clarified its

understanding of the pleas. Defense counsel, however, did not provide the court with that opportunity.[7] Consequently, the appellant's first basis for challenging the trial court's ruling regarding good faith is barred by Rule 5A:18.[8]

We turn next to the appellant's claim that the trial court erroneously concluded that he did not act in good faith in making and seeking to withdraw his pleas. Governing principles provide that a defendant does not have "an unbridled right" to withdraw a guilty or no-contest plea prior to sentencing "simply because he asserts that he has a reasonable defense." *See Hubbard*, 60 Va. App. at 211 n.4. He must establish that both the plea itself and the request to withdraw it were made in good faith. *See Pritchett v. Commonwealth*, 61 Va. App. 777, 787 (2013); *see also DeLuca v. Commonwealth*, 73 Va. App. 567, 579 (2021) (dividing these requirements into two separate prongs). The purpose of this requirement is to "protect[] the integrity of the judicial process" by preventing the plea from being used "as a subterfuge to manipulate the court." *Hubbard*, 60 Va. App. at 208 (quoting *Cobbins v. Commonwealth*, 53 Va. App. 28, 34 (2008)). A defendant does not act in good faith if "the purpose of the motion is merely to cause undue delay in the administration of justice." *Id.* at 211 n.4. "A trial court's finding on the issue of good faith is a finding of fact, and 'we are bound by [that] finding[] . . . unless [it was] "plainly wrong" or without evidence to support [it].'" *Ramsey*, 65 Va. App. at

---

[7] The appellant does not ask the Court to apply the good cause or ends of justice exception to Rule 5A:18, and the Court will not raise either exception *sua sponte*. *See Jones v. Commonwealth*, 293 Va. 29, 39 n.5 (2017).

[8] We note that the trial court expressly acknowledged in its ruling with regard to both the plea agreement and the statute that the appellant's request was one "to withdraw [his] no contest plea[s]." It repeatedly characterized them as no-contest pleas. The court's references to them on a few occasions as guilty pleas when evaluating the statutory factors for withdrawing a plea does not reflect that it misunderstood the nature of the pleas. *See Clauson*, 29 Va. App. at 294 (noting that a no-contest plea operates as a guilty plea); *see also Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977) ("[W]e will not fix upon isolated statements of the trial judge taken out of the full context in which they were made[] and use them as a predicate for holding the law has been misapplied.").

600-01 (second, third, fourth, and fifth alterations in original) (quoting *Branch v. Commonwealth*, 60 Va. App. 540, 548 (2012)).

The appellant testified at the hearing on the motion to withdraw the pleas. He addressed the trial court's denial of his motion for a continuance, which he then stated was for the purpose of obtaining witnesses who could provide an alternate explanation for the primer residue found in the truck he drove from the scene. He also testified about his execution of the plea agreement and entry of the no-contest pleas. The appellant said that when the court denied his continuance motion, he was distressed due to the absence of witnesses necessary to his defense. He said that he feared being convicted of first-degree murder and receiving a longer sentence than the one offered in the plea agreement. He suggested that he "numbly" answered the questions in the plea colloquy to "get the situation over with" because it was "overwhelming." The appellant further asserted that he sought to withdraw his pleas because he "didn't know it was that high," logically referring to the sentencing range for the reduced charge of second-degree murder.

When the court evaluated the factors for seeking to withdraw a plea under Code § 19.2-296, it focused specifically on whether the appellant acted in good faith. The court expressly stated that it did not believe that the denial of the motion to continue was "so shocking" that it impacted the appellant's decision to "agree that the other side ha[d] enough evidence to sustain [its] burden" of proof.

This assessment of the appellant's credibility is a finding of fact. *Coleman*, 51 Va. App. at 292. Like all factual findings related to the appellant's motion to withdraw his pleas, it is subject to deference on appeal unless plainly wrong. *See Ramsey*, 65 Va. App. at 600-01.

The evidence in the record, viewed under this standard, fully supports the trial court's finding that the appellant did not act in good faith in making and seeking to withdraw his pleas. With regard to his claim that he acted in good faith in entering the pleas because the denial of the

- 15 -

continuance motion surprised him, the record supports the trial court's finding that surprise did not explain his entry of the pleas. The record reflects that in October 2020, more than six months prior to trial, the defense had access to information that primer residue had been found on the steering wheel and driver's door of the truck. It further shows that defense counsel met with the appellant to discuss the evidence and trial strategy on numerous occasions in the months before trial. Additionally, the record indicates the existence of a defense-requested order requiring the disclosure of witnesses. Despite these things, the appellant never clearly explained why he decided only the night before trial that he wanted to call the owner of the truck (presumably his cousin) and its unnamed additional user as witnesses to provide an alternative theory regarding the source of the primer residue. This evidence supports the trial court's finding that the appellant did not enter his pleas due to good-faith surprise.

The record similarly supports the trial court's finding that the appellant did not act in good faith in seeking to withdraw the pleas. When a defendant seeks to withdraw his plea merely because he is "fearful of his possible sentence," the motion to withdraw is not made in good faith. *Ramsey*, 65 Va. App. at 601; *see Branch*, 60 Va. App. at 549; *see also Coleman*, 51 Va. App. at 290-91 (observing that every defendant fears sentencing and holding that a "natural fear of a life sentence," standing alone, is insufficient to require a trial court to permit withdrawal of a plea). The appellant testified that he entered the no-contest pleas because he was afraid of the sentence he would receive if convicted of first-degree murder, the offense originally charged. He further explained that he later sought to withdraw the pleas because he "didn't know" that the sentencing range for the reduced charge of second-degree murder "was that high" and he did not want a sentence within that range. *See Ramsey*, 65 Va. App. at 601. Fear of the sentence simply did not provide a good faith basis for seeking to withdraw the pleas.

Finally, the timing and sequence of the relevant events provides additional evidence supporting the trial court's finding of a lack of good faith. As the prosecutor noted, the appellant entered the pleas directly on the heels of the denial of his continuance motion and then sought to withdraw them after a period of time had passed. Allowing the appellant to withdraw the pleas under these circumstances would permit him to obtain indirectly what he had been unable to obtain directly—a continuance of his trial. *See Hubbard*, 60 Va. App. at 208. These circumstances support the trial court's finding that the appellant did not act in good faith in seeking to withdraw the pleas.

The record entirely supports the trial court's factual findings and legal conclusions regarding the appellant's making and seeking to withdraw the pleas. The factual findings are not plainly wrong or without evidence to support them, and the legal conclusions are not erroneous. Based on the record as a whole, we conclude that the trial court did not abuse its discretion.[9]

---

[9] The decision in *Thomason*, 69 Va. App. at 96-98, implies that we should also consider the appellant's challenge to the trial court's ruling regarding prejudice to the Commonwealth. However, the decision in *Cobbins*, 53 Va. App. 28, also involving a plea agreement, affirmatively prevents us from reaching the prejudice issue. In *Cobbins*, the Court concluded that the defendant's motion to withdraw his guilty pleas did not "satisfy the threshold good-faith requirement," barring withdrawal of his plea. 53 Va. App. at 36 n.4. It expressly applied best-and-narrowest ground principles to avoid addressing another of the requirements, whether he proffered a reasonable defense. *Id.* To the extent that *Thomason* may indirectly imply the need to consider prejudice here, we view *Cobbins* as controlling. We therefore do not consider the issue of prejudice. *See id.*; *see also DeLuca*, 73 Va. App. at 580 & n.4 (holding that the defendant's motion to withdraw his guilty pleas was "filed in bad faith," barring the withdrawal of his plea, and applying best-and-narrowest ground principles to avoid addressing the issue of prejudice). *See generally Saal v. Commonwealth*, 72 Va. App. 413, 424-25 (2020) (discussing nonbinding *dicta*); *Cooper*, 54 Va. App. at 571 (same).

## III.  CONCLUSION

For the foregoing reasons, we hold that the trial court did not err by denying the appellant's motion for a continuance on the morning of trial or his subsequent motion to withdraw his no-contest pleas.  Consequently, the trial court's judgments are affirmed.

*Affirmed*.